**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| SAM WILSON, JR., JOHN AND JACKIE UNTHANK,<br><br>               *Plaintiffs*,<br>   v.<br><br>EAGLE NATIONAL BANK, EAGLE NATIONWIDE MORTGAGE COMPANY, EAGLE NATIONAL BANCORP, INC., ESSA BANCORP, INC., and ESSA BANK & TRUST,<br><br>               *Defendants*. | Civil Action No. 8:20-cv-1344 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS COUNT II OF THE AMENDED COMPLAINT**

Brian L. Moffet, Esq. (Fed. Bar No. 13821)
Michael B. Brown, Esq. (Fed. Bar No. 19641)
Miles & Stockbridge, P.C.
100 Light Street
Baltimore, MD 21202
410-727-6464
bmoffet@milesstockbridge.com
mbrown@milesstockbridge.com

Ryan T. Becker, Esq. (admitted *pro hac vice*)
David A. Doty, Esq. (admitted *pro hac vice*)
Fox Rothschild LLP
2000 Market Street
20th Floor
Philadelphia, PA 19103-3222
215-299-2000
rbecker@foxrothschild.com
ddoty@foxrothschild.com

*Counsel for Defendants*

111211\000002\4830-3459-2462.v1

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

PLAINTIFFS' ALLEGATIONS ................................................................................................ 2

LEGAL STANDARD.................................................................................................................. 3

ARGUMENT ............................................................................................................................... 4

I.  PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE *PER SE* SHERMAN ACT PRICE-FIXING CLAIM BECAUSE THERE ARE NO ALLEGATIONS OF A PRICE-FIXING AGREEMENT BETWEEN DIRECT COMPETITORS RELATED TO PLAINTIFFS' LOANS................................................................................................................................ 4

    A.  The Alleged Conduct of All Star And The Eagle Defendants Is Not A *Per Se* Illegal Price-Fixing Agreement................................................................................................ 5

    B.  Plaintiffs' New Allegations Related to Eagle Nationwide Abstract Company Do Not Get Them Over Their Required Plausibility Hurdle....................................................... 7

II.  PLAINTIFFS ARE NOT PERMITTED TO FURTHER AMEND THE COMPLAINT…  11

CONCLUSION.......................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................................3, 8

*Continental Airlines, Inc. v. United Airlines, Inc.*,
   277 F.3d 499 (4th Cir. 2002) ....................................................................................................4

*Donaldson et al. v. Primary Residential Mortg., Inc.*,
   No. ELH-19-1175, 2020 WL 3184089 ....................................................................................7

*Hospital Bldg. Co. v. Trustees of Rex Hosp.*,
   691 F.3d 678 (4th Cir. 1982) ....................................................................................................4

*Loren Data Corp. v. GXS, Inc.*,
   No. DKC 10-3474, 2011 WL 3511003 (D. Md. Aug. 9, 2011), *aff'd*, 501 F.
   App'x 275 (4th Cir. 2012) ........................................................................................................8

*Obiefuna v. Hypotec, Inc.*,
   No. 1:19-cv-01039, 2020 WL 1532218 (S.D. Ind. Mar. 31, 2020) .......................................6, 8

*Saman v. LBDP, Inc.*,
   No. DKC-12-1083, 2012 WL 5463031 (D. Md. Nov. 7, 2012) ...............................................1

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976)....................................................................................................................9

*Somerville v. West Town Bank & Trust*,
   No. PJM 19-0490, 2019 WL 6131288 (D. Md. Nov. 19, 2019).................................... *passim*

*Southern Volkswagen, Inc. v. Centrix Financial, LLC*,
   357 F. Supp. 2d 837 (D. Md. 2005) ........................................................................................11

*Standard Oil Co. v. U.S.*,
   221 U.S. 1 (1911)......................................................................................................................4

*Texaco Inc. v. Dagher*,
   547 U.S. 1 (2006)......................................................................................................................4

*Walls v. Sierra Pac. Mortg. Co., Inc.*,
   No. GLR-19-595, 2020 WL 1528626.......................................................................................7

111211\000002\4830-3459-2462.v1

**Statutes**

Real Estate Settlement Procedures Act Section 8(a) ........................................................................1

Sherman Act, 15 U.S.C. § 1..............................................................................................................1, 4

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(a)(4) ............................................................................1

Federal Rules of Civil Procedure Rule 12(b)(6) .........................................................................1, 3

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and this Court's Order dated September 1, 2020, *see* ECF No. 32, Defendants Eagle National Bank, Eagle Nationwide Mortgage Company, Eagle National Bancorp, Inc., (the "Eagle Defendants"), ESSA Bancorp, Inc., and ESSA Bank & Trust (and together with the Eagle Defendants, collectively, "Defendants") submit this memorandum of law in support of their Motion to Dismiss Count II (Sherman Act, 15 U.S.C. § 1) of Plaintiffs' Amended Complaint with prejudice.

## PRELIMINARY STATEMENT

According to the Amended Complaint, Plaintiffs Sam Wilson, Jr., and John and Jackie Unthank obtained mortgage loans from the Eagle Defendants in 2010 and used All Star Title, Inc. ("All Star") for title and settlement services on their loans. Now, ten years after their loans closed, Plaintiffs accuse the Eagle Defendants of accepting improper benefits from All Star in exchange for the referral of their settlement services in violation of Section 8(a) of the Real Estate Settlement Procedures Act ("RESPA"). Defendants, for purposes of this motion only, concede that Plaintiffs have adequately pleaded their RESPA claim. But their attempt to turn that RESPA claim into a simultaneous violation of the Sherman Act is devoid of the factual or legal support required to move forward.[1]

Plaintiffs' Sherman Act claims are not based on any agreement between direct competitors, the key requirement needed to plead a viable antitrust claim. The allegations of the Amended Complaint make clear that the Eagle Defendants and All Star are *not* competitors. Yet, all of the

---

[1] Defendants are not moving to dismiss Count I of the Amended Complaint at this time, and will answer that Count within fourteen (14) days after the Court's ruling on this motion in accordance with Rule 12(a)(4) of the Federal Rules of Civil Procedure. *See Saman v. LBDP, Inc*., Civil Action No. DKC-12-1083, 2012 WL 5463031, at *4 (D. Md. Nov. 7, 2012) (finding defendant's motion to extend time to answer counts that were not subject to motion to dismiss was "unnecessary" because it is "'best to stall the proceedings on all counts until after the court rules on the Rule 12(b)(6) motion.'" (quoting *Godlewski v. Affiliated Computer Servs., Inc*., 210 F.R.D. 571, 572 (E.D.Va. 2002) (holding that a motion to dismiss one count of a multi-count complaint extends the deadline for answering the remaining counts until [fourteen] days after ruling on motion)).

allegations about the supposed agreement to fix the price of title services here are between All Star and the Eagle Defendants—non-competitors that relevant case law, including a recent decision in this Court, unequivocally reject as sufficient to state a Sherman Act claim.

Plaintiffs try to skirt this deficiency by foisting the alleged agreement by the Eagle Defendants onto a separate affiliated company that is not even a party to this action—Eagle Nationwide Abstract Company. But this sleight-of-hand does not fill the gaping void that exists in the Amended Complaint: there are no allegations regarding the scope or contours of any alleged agreement between All Star and Eagle Nationwide Abstract Company. In fact, there are no allegations of any communications between these companies (or the Eagle Defendants referencing this title company, for that matter) of any kind. And to put the final nail in the Sherman Act coffin, there are no allegations whatsoever that the named Plaintiffs' loans were involved in any price-fixing agreement between All Star and Eagle Nationwide Abstract Company.

For these reasons, as explained more fully below, Plaintiffs have failed to state a plausible claim under the Sherman Act. Count II of the Amended Complaint should therefore be dismissed with prejudice.

## **PLAINTIFFS' ALLEGATIONS**

Plaintiffs and the other putative class members allege that they are borrowers who currently have, or previously had, a residential mortgage loan originated or brokered by the Eagle Defendants. *See* Am. Compl. at ¶¶ 1–2. Plaintiffs claim that ESSA Bank & Trust and ESSA Bancorp, Inc. are successors-in-interest to the Eagle Defendants. *Id.* at ¶¶ 1, 15. The Eagle Defendants are alleged to have violated RESPA by accepting kickbacks from All Star in exchange for the Eagle Defendants referring borrowers to All Star for title and settlement services in connection with residential mortgage loans, refinances, and reverse mortgages to All Star. *Id.* at ¶¶ 18–31.

Plaintiffs further allege that the Eagle Defendants and All Star fixed the price that All Star charged to putative class members for title and settlement services at an above-market level such that a portion of the price was "not associated with any legitimate title and settlement service," and charged solely to fund their alleged agreement. *Id.* at ¶¶ 3, 21. Despite the fact that the Eagle Defendants and All Star admittedly offered two entirely different products, *id.* at ¶¶ 8–12, 17, Plaintiffs allege that the Eagle Defendants and All Star were "direct competitors," and therefore the purported arrangement constituted a horizontal agreement to fix the price for title and settlement services. *Id.* at ¶ 201. The basis for Plaintiffs' allegations is that the Eagle Defendants were affiliated with another company, Eagle Nationwide Abstract Company, which performed title services. *Id.* at ¶¶ 84–89. Notwithstanding this claim, Eagle Nationwide Abstract Company—the alleged "direct competitor" of All Star—is not even a party to this case.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). While a court must accept all well-pleaded factual allegations as true, legal conclusions are not entitled to an assumption of truth, even if cast in the form of factual allegations. *See id*. A complaint cannot survive a motion to dismiss if it relies on a "formulaic recitation of the elements" of a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, a plaintiff must plead "enough facts to state a claim for relief that is plausible on it its face." *Id*. at 570. "Plausible" suggests that an allegation must do more than present "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. When "the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. (quoting Fed. R. Civ. Pro. 8(a)(2)).

**ARGUMENT**

I. **PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE *PER SE* SHERMAN ACT PRICE-FIXING CLAIM BECAUSE THERE ARE NO ALLEGATIONS OF A PRICE-FIXING AGREEMENT BETWEEN DIRECT COMPETITORS RELATED TO PLAINTIFFS' LOANS.**

Section 1 of the Sherman Act broadly prohibits "contract[s], combination[s] . . . , and conspirac[ies] in restraint of trade." 15 U.S.C. § 1. Courts have long construed this language to forbid only agreements that are "unreasonable" restraints on trade. *See, e.g., Standard Oil Co. v. U.S.,* 221 U.S. 1, 58–60 (1911). In analyzing whether a particular agreement represents such an "unreasonable" restraint, federal courts rely on three analytical frameworks: (1) the "*per se*" analysis, which applies to "obviously anticompetitive restraints"; (2) the "quick-look" analysis, for those combinations with procompetitive justifications; and (3) the "rule of reason," for alleged restraints whose net impact on competition is not obviously ascertainable. *See Continental Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 509 (4th Cir. 2002).[2]

"[C]ertain recurring business practices, because of their pernicious effect on competition, are considered illegal per se under the Sherman Act." *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 691 F.3d 678, 684 (4th Cir. 1982) (internal quotation marks omitted). "Price-fixing agreements between two or more competitors . . . fall into the category of arrangements that are per se unlawful." *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006); *see also Somerville v. West Town Bank & Trust*, No. PJM 19-0490, 2019 WL 6131288, *6 (D. Md. Nov. 19, 2019) ("This is because, based on years of experience, courts have found that such agreements always or almost tend to restrict competition and decrease output." (internal quotation marks omitted)). For this reason, *per se*

---

[2] Plaintiffs have indicated to Defendants and the Court that they are only pursuing a Sherman Act claim under a *per se* price-fixing theory. Based on that representation, Defendants have confined this motion to an analysis under the *per se* analytical framework established by the Supreme Court and the Fourth Circuit. If, in opposition to the Motion, Plaintiffs raise other grounds to avoid dismissal, Defendants' reserve the right to respond through a reply brief.

liability is strictly reserved "only [for] those agreements that are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality." *Somerville*, 2019 WL 6131288 at *6 (internal quotation marks omitted).

Under this framework, a plaintiff alleging a *per se* violation of the Sherman Act must plead, and ultimately prove, (1) the existence of an agreement, combination, or conspiracy; (2) among *"actual competitors"*; (3) with the purpose or effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity; (4) in interstate or foreign commerce. *Id.* (emphasis added) (internal quotation marks omitted).

### A. The Alleged Conduct of All Star And The Eagle Defendants Is Not A *Per Se* Illegal Price-Fixing Agreement.

Though alleging exclusively a *per se* violation may "lighten" a plaintiff's pleading burden, "it is not a riskless strategy"; a plaintiff's claim for *per se* violations of the Sherman Act will be dismissed if a trial court "determines that the restraint at issue is sufficiently different from the *per se* archetypes." *Somerville*, 2019 WL 6131288 at *6 (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 317 (3d Cir. 2010)) (internal quotation marks omitted). Here, Plaintiffs took on the risk, but their deficient factual allegations deny them the reward.

Plaintiffs' characterization of the Eagle Defendants' and All Star's alleged relationship as a horizontal price-fixing arrangement fails because they do not adequately allege that the Eagle Defendants competed directly in the market for title and settlement services—nor can they. As the Amended Complaint acknowledges, the Eagle Defendants and All Star offered entirely different products in distinctly separate markets, and therefore could not have been in direct competition with each other. *See* Am. Compl. at ¶¶ 8–12, 17. Defendants provided banking and mortgage lending services, while All Star provided title settlement services. *See id.* There is not a single allegation included among the 215 separately-numbered paragraphs that comprise the Amended

5

Complaint that plausibly alleges that the Eagle Defendants and All Star competed against each other. And with good reason, because they did not do so.

At least two courts—including Judge Messitte of this Court—have recently dismissed similar horizontal price-fixing claims brought by the same attorneys representing Plaintiffs here, arising from the same alleged scheme involving All Star. In *Somerville v. West Town Bank & Trust*, No. PJM 19-0490, 2019 WL 6131288 (D. Md. Nov. 19, 2019), the plaintiffs there alleged that West Town—a commercial bank that had brokered mortgages to a class of borrowers in a way similar to what is alleged here—also conspired to fix prices with All Star. This Court rejected the plaintiffs' claim that the two entities could be liable for horizontal price fixing because they were not competitors. *See id* at *7. There, the court held:

> West Town and All Star are distinctly not competitors. West Town is a "commercial bank," whereas All Star is a "title and settlement services company," All Star does not offer residential mortgages, and West Town does not provide settlement services. . . . Plaintiffs here concede that the two allegedly conspiring entities are not competitors. Notably, Plaintiffs have not supplied a single case that has applied the *per se* rule to non-competing entities allegedly engaged in a price fixing scheme. Because Plaintiffs did not, as they must, plausibly allege that West Town and All Star are competitors, they have not sufficiently pled a *per s*e violation of the Sherman Act.

*Id.*; *see also Obiefuna v. Hypotec, Inc.*, No. 1:19-cv-01039, 2020 WL 1532218, at *13 (S.D. Ind. Mar. 31, 2020) ("As in *Somerville* and for the same reasons, Plaintiffs' Sherman Act claim must be dismissed."). The same rationale applied by this Court in *Somerville* and by the Southern District of Indiana in *Obiefuna* considering nearly identical claims applies equally here, and compels dismissal of Plaintiffs' Sherman Act claim.  All Star and the Eagle Defendants are not competitors, and the Sherman Act analysis should end there.

### B.   Plaintiffs' New Allegations Related to Eagle Nationwide Abstract Company Do Not Get Them Over Their Required Plausibility Hurdle.

In the wake of Judge Messitte's opinion in *Somerville*, RESPA plaintiffs in this Court began voluntarily withdrawing their Sherman Act claims. *See, e.g.*, *Walls v. Sierra Pac. Mortg. Co., Inc.*, No. GLR-19-595, 2020 WL 1528626, at *2 n.4; *Donaldson et al. v. Primary Residential Mortg., Inc.*, No. ELH-19-1175, 2020 WL 3184089, at *1 n.1. Here, Plaintiffs try a new line of attack. On the one hand, Plaintiffs acknowledge that Defendants are not competitors of All Star; on the other hand, and in order to avoid dismissal, Plaintiffs vaguely allege that while they admit Defendants are not competitors of All Star, their Sherman Act claim is still viable because there is a business relationship between the Eagle Defendants and an affiliated entity, Eagle Nationwide Abstract Company. *Id.* at ¶¶ 84-89. It is telling that Plaintiffs could have amended their complaint to add Eagle Nationwide Abstract Company as a Defendant, but they chose not to do so. That leaves Plaintiffs without any factual allegations that there was a price fixing agreement between direct competitors, which is precisely the defect that Judge Messitte found fatal when he dismissed the Sherman Act claim in *Somerville*.

The allegations in the Amended Complaint related to Eagle Nationwide Abstract Company fare no better. The Amended Complaint is devoid of any factual allegations laying out—in even the broadest terms—what the price-fixing agreement supposedly was between All Star and Eagle Nationwide Abstract Company. There is not a single allegation that there were any communications between All Star personnel and employees of Eagle Nationwide Abstract Company, let alone communications sufficient to establish that the two entities came to an actual agreement to fix the prices of title-related settlement services. In fact, there are no allegations that All Star was even aware that the Eagle Defendants had a title company. The complete absence of any factual allegations related to the scope and contours of a price-fixing agreement between the

7

actual entities that supposedly competed against each other (neither of which are parties to the case) ensures that the claim cannot survive this motion. *See, e.g.*, *Loren Data Corp. v. GXS, Inc.*, No. DKC 10-3474, 2011 WL 3511003, at *5 (D. Md. Aug. 9, 2011) (dismissing Sherman Act claim, in part, because the Amended Complaint did not identify the "specific contours" of the alleged agreement), *aff'd*, 501 F. App'x 275 (4th Cir. 2012); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (holding that a Sherman Act claim should be dismissed where plaintiffs fail to plead enough factual matter to suggest that an agreement was made).

This point is crystallized by a review of the facts actually pleaded in the Amended Complaint. Plaintiffs allege that the price-fixing agreement was only between All Star and the non-competitor Eagle Defendants, but *Somerville* and *Obiefuna* make clear that these parties were not capable of entering into an agreement that violated the Sherman Act. *See, e.g.*, Am. Compl. at ¶¶ 69, 70, 72, 74, 78, 80, 82 ("*The Eagle Defendants* and All Star conspire and agree to fix prices . . ." (emphasis added)); *see also Somerville v. West Town Bank & Trust*, No. PJM 19-0490, 2019 WL 6131288, at *7 (D. Md. Nov. 19, 2019); *Obiefuna v. Hypotec, Inc.*, No. 1:19-cv-01039, 2020 WL 1532218, at *13 (S.D. Ind. Mar. 31, 2020).

The only allegations Plaintiffs muster related to Eagle Nationwide Abstract Company cover merely six of the 215 allegations in the Amended Complaint, yet do nothing to add to the plausibility of their Sherman Act claim. Plaintiffs contend that Eagle Nationwide Abstract Company "function[ed] as the Eagle Defendant's [*sic*] internal title company." Am. Compl. at ¶ 84. Plaintiffs go on to add that the "Eagle Defendants extend their Price Fixing Agreements with All Star to the prices charged by Eagle Title" and claim that this is demonstrated by their Exhibit 24, which purports to include Good Faith Estimates and Affiliated Business Disclosures that the

Eagle Defendants provided to certain other borrowers. *Id.* at ¶ 88. This approach is flawed for at least three reasons.

First, none of the documents included in Exhibit 24 relate to the loans of the named Plaintiffs. Plaintiffs have therefore failed to allege that there was any price fixing agreement for title services that impacted them individually. *See, e.g., Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20 (1976) ("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." (internal quotation marks and citation omitted)). Second, the prices quoted on the documents included in Exhibit 24 are <u>estimates</u> only, not final prices. That fact is patently clear from the face of the documents themselves. *See* Ex. 24, ECF No. 33-1, at 2 ("ESTIMATED FEE") and ("**The charges are estimates only. These amounts will vary depending on the property location and the transaction type.**") (emphasis in original). Third, the Affiliated Business Disclosure Statements include variable *ranges* for the title services that may be charged depending on various factors. *See id.* at 3. Therefore, the provisional nature of the very documents that Plaintiffs affirmatively chose to rely on to allege a price-fixing agreement demonstrate that there was no such agreement between All Star and Eagle Nationwide Abstract Company, as the law requires.

Judge Grimm recently addressed a similar attempt—again by the same attorneys representing Plaintiffs here—to distinguish *Somerville* due to allegations that the defendant maintained an in-house title company, but key differences in that case require a different outcome here.

In *Kadow v. First Federal Bank*, RESPA plaintiffs alleged that CBC National Bank—a commercial bank that had brokered mortgages to a class of borrowers—also conspired to fix prices

9

with All Star in violation of the Sherman Act. *See* No. 8:19-cv-00566-PWG, 2020 WL 5230560 (D. Md. Sept. 2, 2020). With a reluctance made abundantly apparent in his Opinion, Judge Grimm held that the plaintiffs' Sherman Act price fixing claim would, "at least for now," survive the defendant's motion to dismiss, "though barely." *Id.* at *7. But the *Kadow* plaintiffs had a critical factual allegation that "barely" got them past the motion to dismiss: an email chain involving All Star, which stated "They will send over a quote from CBC's in house title company. Our fees will be $200 more than the quote they send over." *See id.* (internal quotation marks omitted). Judge Grimm concluded that this communication demonstrated that Defendants and All Star were therefore at least sharing information and agreeing on prices among the respective title companies, and that is what nudged plaintiffs past the motion to dismiss. *See id.*

This same type of communication is completely absent here. There are no communications between the Eagle Defendants and All Star discussing an agreement related to Eagle Nationwide Abstract Company. In fact, there are no allegations referencing any discussion between the Eagle Defendants and All Star related to Eagle Nationwide Abstract Company of any kind. That absence of fact means that Plaintiffs have failed to allege: (i) any agreement between Eagle Nationwide Abstract Company and All Star; (ii) any contact between Eagle Nationwide Abstract Company and All Star; or (iii) the amount Eagle Nationwide Abstract Company actually charged its customers on their HUD1s as compared to what All Star charged the named Plaintiffs. *See id.* at 198–200. If the inclusion of such evidence in *Kadow* was "barely" enough to carry the plaintiffs across the pleading threshold, then surely the complete absence of any similar allegations or documentation here merits dismissal of Plaintiffs' Sherman Act claim.

In short, Plaintiffs' horizontal price-fixing claim is based solely and entirely on the mere existence of Eagle Nationwide Abstract Company—having nothing to do with the transactions

10

alleged in the Amended Complaint—and thus, is patently insufficient to support a *per se* Sherman Act claim. *See Southern Volkswagen, Inc. v. Centrix Financial, LLC*, 357 F. Supp. 2d 837, 850 (D. Md. 2005) (dismissing Sherman Act claim where there was no horizontal agreement between direct competitors). Accordingly, this Court should dismiss Count II of the Amended Complaint with prejudice.

## II. PLAINTIFFS ARE NOT PERMITTED TO FURTHER AMEND THE COMPLAINT.

Consistent with the Court's direction during the telephonic conference on August 31, 2020, the Amended Complaint filed on September 30, 2020 was Plaintiffs' last attempt to adequately plead their Sherman Act claim.[3]  Plaintiffs included new factual allegations related to their Sherman Act claim, but because those allegations are just as deficient as the ones included in their initial pleading, the only remedy for the Court is to dismiss Count II of the Amended Complaint.

## CONCLUSION

Since the Plaintiffs fail to include any factual allegations plausibly alleging a price-fixing agreement between All Star and non-party Eagle Nationwide Abstract Company, this Court should grant Defendants' Motion, and dismiss Count II of the Amended Complaint with prejudice.

Respectfully submitted,

Dated:  October 14, 2020  /s/ Brian L. Moffet
 Brian L. Moffet, Esq. (Fed. Bar No. 13821)
 Michael B. Brown, Esq. (Fed. Bar No. 19641)
 Miles & Stockbridge, P.C.
 100 Light Street
 Baltimore, MD 21202
 (410) 727-6464
 bmoffet@milesstockbridge.com
 mbrown@milesstockbridge.com

---

[3] Plaintiffs' original Complaint also contained a claim under the Racketeer Influenced and Corrupt Organizations Act, but they dropped that claim in the Amended Complaint.

11

        Ryan T. Becker, Esq. (admitted *pro hac vice*)
        David A. Doty, Esq. (admitted *pro hac vice*)
        Fox Rothschild LLP
        2000 Market Street
        20th Floor
        Philadelphia, PA 19103-3222
        (215) 299-2000
        rbecker@foxrothschild.com
        ddoty@foxrothschild.com


        *Counsel for Defendants*

111211\000002\4830-3459-2462.v1