IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SAM WILSON, JR., *et al.*,

        *Plaintiffs*,

    v.                                  Case No. 8:20-cv-01344-JRR

EAGLE NATIONAL BANK, *et al.*,

        *Defendants*.

## MEMORANDUM OPINION

Pending before the court are Defendants' Motion for Judgment on the Pleadings (ECF No. 219) and Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 226; the "Motion to Amend"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by an accompanying order, the Motion to Amend will be granted in part and denied in part, and the Motion for Judgment on the Pleadings will be denied as moot.

## I.    BACKGROUND

### A.  Factual Allegations

Plaintiffs' claims arise from Defendants' assignment or referral of Plaintiffs' loans to All Star Title, Inc. ("All Star"), in exchange for kickback payments disguised as payments to third-party marketing companies. Plaintiffs have, or had, federally related mortgage loans originated and/or brokered by Defendants. (ECF No. 33 ¶ 1.) Defendant Eagle National Bank ("ENB") engaged in the business of consumer mortgage brokering and lending through its wholly owned subsidiary, Eagle Nationwide Mortgage Company ("ENMC"). *Id*. ¶ 8. Defendant Eagle National Bancorp, Inc. ("EN Bancorp") is the holding company of Defendants ENB and ENMC. *Id*. ¶ 10. Pursuant to a July 2015 Plan of Merger filed with the United States Securities and Exchange

Commission, by merger of December 4, 2015, Defendant EN Bancorp merged with and into ESSA Bancorp, Inc. (holding company of Defendant ESSA Bank & Trust); ESSA Bancorp was the surviving entity and EN Bancorp ceased to exist. All property, rights, powers, duties, and obligations of EN Bancorp were transferred and assumed by ESSA Bancorp by operation of the merger. *Id*. ¶ 11.

Beginning in 2009, EN Bancorp, ENB, and ENMC, referred to by Plaintiffs as the "Eagle Defendants," began to refer mortgage borrowers to All Star, a Maryland-based title and settlement service company, for title and settlement services in exchange for kickback payments. (ECF No. 33 ¶¶ 2, 44.) Specifically, All Star and Eagle Defendants agreed to charge borrowers fixed prices for title and settlement services. *Id*. ¶ 19. The fixed prices were higher than All Star otherwise charged for similar title and settlement services, and included amounts unassociated with legitimate title or settlement services. *Id*. ¶ 21. Instead of making the kickback payments directly to the Eagle Defendants, All Star disguised the payments by making them to third-party marketing companies. *Id*. ¶ 28. All Star neither needed nor received marketing services from these companies. *Id*. ¶ 24. Instead, the payments covered services performed for Eagle Defendants by the third-party marketing companies. *Id*. ¶¶ 25-29.

Between 2009 and 2011, from Eagle Defendants' branch office located at 350 Bynum Road, Forest Hill, Maryland, Eagle Defendants referred more than 360 Eagle Loans to All Star in return for kickbacks disguised as payments for marketing services to Influence Direct, Jemco, and Tranzact, third-party marketing companies. (ECF No. 33 ¶¶ 47–51.) In the same time frame, from the Eagle Defendants' branch office located at 1A Vale Road Bel Air, Maryland, the Eagle Defendants referred more than 130 Eagle loans to All Star in return for kickback payments disguised as payments for marketing services from Influence Direct and Lendanear Data & Direct

Mail Services. *Id*. ¶¶ 52–55. In 2010, from the Eagle Defendants' office branch at 90 Painters Mill Road in Owings Mills, Maryland, the Eagle Defendants referred at least 12 Eagle Loans to All Star in exchange for kickback payments disguised as payments for marketing services from Lendanear and Influence Direct. *Id*. ¶¶ 56–60.

All Star charged Plaintiffs more than they charged borrowers referred by other lenders for the same services. (ECF No. 33 ¶¶ 70–71, 76–77, 80–81.) The inflated prices included $300 of a "Kickback Overcharge," an amount charged for the sole purpose of funding the kickback and not associated with legitimate title or settlement services. *Id*. ¶¶ 71, 77, 81. The Eagle Defendants and All Star agreed upon the set price to charge borrowers assigned or referred by the Eagle Defendants to All Star. *Id.* ¶¶ 70, 76, 80. The Eagle Defendants then represented the same fixed price for title services from Eagle Nationwide Title Agency, the Eagle Defendants' internal title company. *Id*. ¶¶ 84–89.

### B. Procedural Posture

Plaintiffs filed a class action complaint on May 29, 2020, alleging violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2607(a), the Sherman Act, 15 U.S.C. § 1, and the Racketeer Influenced & Corrupt Organizations Act (RICO) 18 U.S.C. § 1962. (ECF No. 1.) On November 30, 2020, Plaintiffs filed an Amended Complaint alleging violations of RESPA (Count I) and the Sherman Act (Count II). (ECF No. 33, the "Amended Complaint.") Thereafter, Defendants unsuccessfully moved to dismiss Count II. (ECF Nos. 34, 37, 38.) On March 13, 2023, the court certified a Plaintiff class—the Eagle Class—and two Plaintiff subclasses—the Antitrust and Respa Subclasses—under Rule 23 of the Federal Rules of Civil Procedure, and appointed the named Plaintiffs as class representatives. (ECF Nos. 134, 135.)

On March 26, 2024, Defendants ENB, EN Bancorp, Essa Bank & Trust, and ESSA Bancorp filed the instant Motion for Judgment on the Pleadings (ECF No. 219), following which Plaintiffs filed the Motion to Amend (ECF No. 226), which Defendants oppose (ECF No. 243).

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course" within 21 days of service, or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Rule 15(a) counsels that "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). "The Supreme Court has emphasized that 'this mandate is to be heeded.'" *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "The Fourth Circuit's policy is 'to liberally allow amendment.'" *Lavin v. Safeco Ins. Co. of Am.*, No. SAG 22-1788, 2022 WL 17342051, at *1 (D. Md. Nov. 30, 2022) (quoting *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010)). Therefore, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson*, 785 F.2d at 509; see *Oliver v. Dep't of Pub. Safety & Corr. Servs.*, 350 F. Supp. 3d 340, 345 (D. Md. 2018) (noting that "[g]ranting leave to amend [] is the default under Rule 15").[1]

---

[1] Because the court will grant the Motion to Amend in part, Defendants' Motion for Judgment on the Pleadings is moot; therefore, the legal standard applicable to the Motion for Judgment on the Pleadings need not be set forth here.

## III.    ANALYSIS

### A.  Leave to Amend

Defendants oppose the Motion to Amend on grounds of futility, prejudice to Defendants, and Plaintiffs' dilatory/bad faith litigation conduct.  The court addresses each argument in turn.

#### i.    Futility

As explained, leave to amend "should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510.  A court may also deny as futile a request for leave to amend where the "proposed amended complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)); *see In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) ("[I]n recent years, we have made clear that district courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny.").

It is uncontested that Plaintiffs plausibly allege RESPA and Sherman Act violations as against ENMC.  (ECF No. 243 at p. 21.)  Defendants additionally do not dispute that Plaintiffs plausibly allege that, as successors, ESSA Bank & Trust and ESSA Bancorp face RESPA and Sherman Act liability if ENB and EN Bancorp respectively are found liable for the same.  *Id*. at p. 6.  The crux of the dispute is therefore whether Plaintiffs plausibly allege liability of ENB and EN Bancorp.  Importantly, the proposed amended complaint includes new factual allegations regarding the relationship between/among ENMC, ENB, and EN Bancorp in support of veil piercing and *respondeat superior* theories of liability.  (ECF No. 226-2.)

As a threshold matter, the parties apply different standards for veil-piercing.  Without explanation, Defendants cite cases applying New York and Pennsylvania law.  (ECF No. 219 at p.

7; ECF No. 243 at p. 27.)  In response, Plaintiffs rely upon Fourth Circuit authority, *Thomas v. Peacock*, to argue that "federal common law governs the legal standard applicable to veil piercing because RESPA and the Sherman Act are federal claims." (ECF No. 249 at p. 2.) "Because a rule of veil-piercing determines *who is* liable for breaches of ERISA fiduciary duties, we believe that ERISA preempts any state law veil-piercing." *Thomas*, 39 F. 3d 493, 503 (4th Cir. 1994), *rev'd on other grounds*, 516 U.S. 349 (1996) (citing 1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 41.90, at 91 (Supp.1993)). "The Fourth Circuit applies federal standards to a veil-piercing claim under other federal statutes because 'veil [piercing] determines who is liable' under the statute." *Campbell v. Pearl River Techs., LLC*, No. 8:22-CV-00949-JRR, 2023 WL 4421405, at *7 n.5 (D. Md. July 10, 2023) (quoting *Mayes v. Moore*, 419 F. Supp. 2d 775, 782 n.5 (M.D.N.C. 2006)); *see also Equal Rts. Ctr. v. Equity Residential*, No. CCB-06-1060, 2016 WL 1258418, at *3 (D. Md. Mar. 31, 2016) (holding "[t]he court applies federal common law in deciding whether to pierce the corporate veil because that decision implicates an important federal interest: liability for violations of the FHA."); *United States v. Emor*, 850 F. Supp. 2d 176, 205 (D.D.C. 2012) (holding that "[a]lthough the law of the state where a corporation is incorporated normally dictates whether the corporate veil should be pierced, federal common law governs veil-piercing questions when a federal interest is implicated by the veil-piercing inquiry, such as … where the government's regulatory interests are implicated through a federal statute.").[2]

As to the applicable federal common law,

> Federal courts typically will disregard the corporate form where
> doing so is required for "public convenience, fairness and equity."
> *Thomas v. Peacock*, 39 F.3d 493, 504 (4th Cir.1994) (quoting *Alman*

---

[2] The court notes, however, that in *Edmondson v. Eagle Nationwide Mortgage Company*, the parties agreed "that Pennsylvania law applies to the issue of whether to pierce the corporate veil in this case, because ENMC and ENB were incorporated in Pennsylvania." SAG-16-3938, ECF No. 187 at p. 40 n.19.  While the court here applies federal common law, the standards for veil-piercing under federal common and Pennsylvania law are "quite similar." *United States v. Union Corp.*, 259 F. Supp. 2d 356, 388 n.1 (E.D. Pa. 2003).

> *v. Danin*, 801 F.2d 1, 3–4 (1st Cir.1986)) (internal quotation marks
> omitted), *rev'd on other grounds*, 516 U.S. 349, 116 S.Ct. 862, 133
> L.Ed.2d 817 (1996). A court can pierce the corporate veil when "(1)
> the shareholder dominates and controls the organization and (2)
> imposing such liability is needed to avoid injustice." *Mayes v.
> Moore*, 419 F.Supp.2d 775, 781 (M.D.N.C.2006) (citing *Thomas*,
> 39 F.3d at 504). In making the determination, courts have looked at
> a number of factors, including "gross undercapitalization, failure to
> observe corporate formalities, nonpayment of dividends, siphoning
> of the corporation's funds ... non-functioning of officers and
> directors, absence of corporate records, and the fact that the
> corporation is merely a façade for the operation of the dominant
> stockholder." *Keffer v. H.K. Porter Co., Inc.*, 872 F.2d 60, 65 (4th
> Cir.1989) (citing *DeWitt Truck Brokers, Inc. v. W. Ray Flemming
> Fruit Co.*, 540 F.2d 681, 685–87 (4th Cir.1976)); *Mayes*, 419
> F.Supp.2d at 781. The Fourth Circuit has made clear that courts must
> be cautious in deciding to pierce the corporate veil, but not hesitate
> to do so where justice requires. *Keffer*, 872 F.2d at 64.

*Trustees of the Heating, Piping & Refrigeration Pension Fund v. Conditioned Air Sys., Inc.*, No. CIV. CCB-12-604, 2014 WL 1290639, at *7 (D. Md. Mar. 28, 2014).

In the proposed amended complaint, Plaintiffs plead undercapitalization (ECF No. 226-3 ¶ 9(b)), failure to follow corporate formalities (*Id.* ¶ 9(a)), and that ENMC was merely a façade for ENB operations (*Id.* ¶ 9(c)). Plaintiffs additionally allege that ENB used the corporate form of ENMC to perpetuate a fraud. *Id.* ¶ 9(c). Plaintiffs specify that "at the time of [ENMC's] formation" named ENB officers, directors, and agents falsely represented to ENB regulators and the public that ENMC was a separate entity from ENB. *Id.* The ENB officers, directors, and agents thereby were able to "operate, and profit from, mortgage operations not permitted under federal regulations, while also being shielded from misconduct in those mortgage operations, including the RESPA and Sherman Act violations pled herein." *Id.* In accordance with the heightened pleading standard for fraud allegations set forth in Federal Rule of Civil Procedure 9(b), Plaintiffs have included the time and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. FED. R. CIV. P.

9(b); *Fid. & Guar. Life Ins. Co. v. United Advisory Grp., Inc.*, No. CIV.WDQ-13-0400, 2014 WL 346630, at *8 (D. Md. Jan. 29, 2014) (quoting *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013)). Accordingly, this court is satisfied that Plaintiffs' allegations, taken as true, plausibly state a non-frivolous theory of liability as to Defendant ENB.

As for the liability of EN Bancorp, the proposed amended complaint adds the following: "at all relevant times, the Directors of EN Bancorp and ENB were the same" (ECF No. 226-3 ¶ 10); as early as 2009, EN Bancorp, along with ENB, was aware of the All Star kickback arrangement and "failed to take any action to end the practice" and "permitted the practice of illegal kickbacks to continue, and continued to receive and accept the benefits derived from the mortgage loans that were originated, processed, and closed in violation of RESPA" (*Id.* at ¶ 45(a)); EN Bancorp's director, William Bromley, participated in a plan to refer mortgage loans to Eagle Title (not All Star) in exchange for kickback payments from Eagle Title (*Id*. at ¶ 45(b)); and

> Eagle National Bancorp, Inc. and Eagle National Bank exercised control over Eagle Title because, among other things, Eagle National Bank determined Eagle Title's President's eligibility for additional grants of Eagle National Bancorp., Inc. stock options, and because both Eagle National Bancorp., Inc and the Bank worked to control the manner in which Eagle Title sought to increase the volume of title and settlement service business that Eagle Nationwide Mortgage Company referred to Eagle Title—including working to implement Eagle Title's plan to pay illegal kickbacks to Eagle Nationwide Mortgage Company. (*Id*. at ¶ 85(a)).

At this time and in this manner, the proposed amended complaint is futile in alleging liability of EN Bancorp. "It is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998). Therefore, allegation that ENB shared Directors with EN Bancorp, Inc., is insufficient to pierce the corporate veil from the former subsidiary to the latter holding company. *See* ECF No. 226-3 ¶ 10. Further,

accepted as true, allegations in paragraph 45(a) that EN Bancorp was "aware" of ENMC's RESPA violations, did not stop them, and "accept[ed] the benefits derived from the mortgage loans that were originated, processed, and closed in violation of RESPA" are insufficient to establish direct RESPA liability or grounds to pierce the corporate veil. *See Brasko v. First Nat'l Bank of Pennsylvania*, 700 F. Supp. 3d 354, 375 (D. Md. 2023) (identifying elements of a RESPA claim under 12 U.S.C. § 2607(a) as "(1) a payment of a thing of value, (2) given and received pursuant to an agreement to refer settlement business, and (3) an actual referral"); *Trustees*, *supra*. Finally, as to new allegations about a kickback scheme involving referrals to and kickbacks from Eagle Title, a subsidiary of EN Bancorp, instead of from All Star, Eagle Title is not a defendant and Plaintiffs received settlement and title services from All Star. *See Wilson v. Eagle National Bank*, 2023 WL 2478933, at *2 (certifying the class in this case as Plaintiffs who were borrowers on a loan brokered by ENB or ENMC for which All Star Title, Inc provided a settlement service.).

The proposed amended complaint also does not include allegations to support direct, veil-piercing, or *respondeat superior* liability for Sherman Act violations of EN Bancorp. As described above, the proposed amended complaint does not contain allegations (even accepted as true) sufficient to pierce the corporate veil from ENMC to EN Bancorp or from ENB to EN Bancorp. Plaintiffs urge that EN Bancorp "directly participated in the conduct responsible for Plaintiffs' RESPA and Sherman Act injuries by operating a kickback scheme through Eagle's own title company." (ECF No. 249 at p. 6.) Eagle Title is a subsidiary of EN Bancorp. (ECF No. 226-2 ¶ 45(b).) To the extent Plaintiffs allege that Eagle Title entered an agreement to artificially set prices with All Star, conclusory, vague language ("EN Bancorp directly participated in the conduct responsible for . . .") absent any facts to plausibly connect any such agreement to EN Bancorp fails to state a claim against EN Bancorp. The mere existence of the legal relationship between EN

Bancorp and Eagle Title is insufficient to hold EN Bancorp liable for the acts of Eagle Title based on the theories of liability set forth in the proposed amended complaint. Eagle Title is not a named party to this lawsuit, and the allegations of EN Bancorp's control over Eagle Title are insufficient to support piercing the corporate veil of Eagle Title to EN Bancorp. *See* ECF No. 226-3 ¶ 85(a), *supra*. Plaintiffs do not allege Eagle Title was a façade for EN Bancorp, that Eagle Title failed to observe the corporate form, or any of the other factors courts are guided to consider under federal common law on veil-piercing. *Trustees, supra*. ESSA Bancorp's liability, if any, is through EN Bancorp. (ECF No. 226-3 ¶ 186(g), 205(g).) Thus, because this court finds that the amended complaint is futile in respect to pleading liability for EN Bancorp, the same is true for ESSA Bancorp.

Defendants also contest as "factually incorrect" and "without merit" allegations set forth in the amended complaint at paragraphs 186(a)–(f) and 205(a)–(f), and urge that Plaintiffs' contentions essentially cannot hold water based on the chronology of legal events and timing of entity relationships. (ECF No. 243 at pp. 30–31.) While the court appreciates Defendants' attention to these details, the court is mindful not to convert the pending Motion to Amend to a 12(b)(6) or other dispositive motion, or apply a legal standard not (yet) applicable to the proposed pleading.

Finally, Defendants object to Plaintiffs' continued use of group pleading in the proposed amended complaint. Group pleading of the kind employed by Plaintiffs does not *per se* violate the Federal Rules of Civil Procedure, but Plaintiffs shall specify each Defendant's alleged violations of RESPA and the Sherman Act. *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807, 824 n.1 (D. Md. 2015). Plaintiffs set forth sufficient factual allegations to plausibly state claims for relief against Defendants ENMC, ENB, and Essa Bank & Trust and specified theories

10

of liability for each, thereby avoiding impermissible group pleading. *See id.* (explaining that once plaintiff "provided sufficient factual detail about the nature of his allegations and about each defendant to provide fair notice of his claims" group pleading was permissible. (citation omitted)). Finding that the proposed amended complaint is not futile with respect to Defendants ENMC, ENB, and ESSA Bank & Trust, the court turns to Defendants' other arguments.

### ii. Prejudice

Defendants ask this court to deny leave to amend because Plaintiffs' delay in seeking amendment and the expense of further discovery would prejudice Defendants. (ECF No. 243 at p. 19–23.)

"Prejudice is the weightiest factor, the absence thereof, 'though not alone determinative, will normally warrant granting leave to amend.'" *Oliver v. Dep't of Pub. Safety & Corr. Servs.*, 350 F. Supp. 3d 340, 346 (D. Md. 2018), *aff'd sub nom. Oliver v. Bartholomew*, 785 F. App'x 166 (4th Cir. 2019) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)). "Prejudice is 'often determined by the nature of the amendment and its timing.'" *Medline Indus., Inc. v. York Bldg. Prod. Co.*, 702 F. Supp. 3d 403, 408–09 (D. Md. 2023) (quoting *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006)). As explained by the Fourth Circuit:

> A common example of a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred.

*Laber*, 438 F.3d at 427 (citations omitted)); *see Medline Indus., Inc.*, 702 F. Supp. 3d at 408–09 (same). Relatedly, amendment may be prejudicial if it would "render prior discovery a misdirected use of resources." *Future Field Solutions, LLC v. Van Norstrand*, No. CV DKC 23-1301, 2023

WL 8934021, at *3 (D. Md. Dec. 27, 2023) (citing *Sharkey IRO/IRA v. Franklin Res.*, 263 F.R.D. 298, 301 (D. Md. 2009)).

This court has repeatedly held that "'the time, effort, and money . . . expended in litigating [a] case' do not constitute 'substantial prejudice' weighing against leave to amend." *Best v. Newrez LLC*, No. GJH-19-2331, 2020 WL 5513433, at *8 (D. Md. Sept. 11, 2020) (quoting *Class Produce Group, LLC v. Harleysville Worcester Ins. Co.*, No. ELH-16-3431, 2017 WL 2377105, at *9 (D. Md. May 31, 2017)); *see, e.g.*, *Terran Biosciences, Inc. v. Compass Pathfinder Ltd.*, No. CV ELH-22-1956, 2024 WL 449323, at *17 (D. Md. Feb. 6, 2024) (same); *Future Field Solutions, LLC v. Van Norstrand*, No. CV DKC 23-1301, 2023 WL 8934021, at *3 (D. Md. Dec. 27, 2023) (same); *see also All Weather, Inc. v. Optical Sci., Inc.*, 443 F. Supp. 3d 656, 664 (D. Md. 2020) (noting how a party claimed that it had "'expended substantial resources in response to the Complaint,' but [could] point to no other prejudice from allowing the amendment, which comes before discovery and only purports to add new theories and correct and clarify the facts already alleged").

Defendants describe Plaintiffs' amendment as highly prejudicial in that it "shift[s] the theory of the case" and they "are left to scramble to identify an expert to address different theories in less than thirty days." (ECF No. 243 at p. 19, 20.) The proposed amendment does not add a new claim nor new parties. *See Foman v. Davis*, 371 U.S. 178, 182 (overruling district court's denial of leave to amend when amendment "would have done no more than state an alternative theory for recovery."). Well before Plaintiffs' instant Motion to Amend, Defendants were aware that Plaintiffs sought information to support theories of vicarious and veil-piercing liability.[3]

---

[3] Additionally, expert and fact discovery regarding the same theories now advanced by the proposed amended complaint has been ongoing between Plaintiffs and Defendants in *Edmondson v. Eagle Nat'l Bank,* No. CV SAG-16-3938.

12

Plaintiffs' amendment is not a shift in theory that causes prejudice by "rendering the non-moving party's prior discovery a misdirected use of resources." *Sharkey*, 263 F.R.D. at 301.

The further a case has progressed, the more likely it is that the amendment will prejudice the defendant. *Laber*, 438 F.3d at 437. But, the Federal Rules recognize that a plaintiff's theory of the case may evolve as litigation progresses. *Marley v. Kaiser Found. Health, Plan of Mid-Atl. States, Inc.,* No. 8:17-CV-01902-PWG, 2018 WL 6000199, at *3 (D. Md. Nov. 15, 2018). Thus, "[p]rejudice stemming from requiring a party to engage in additional fact investigation generally only arises when that additional investigation is required on the eve of trial." *Sharkey*, 263 F.R.D. at 303. Fact discovery in this matter did not conclude until September 6, 2024, five months after the instant motions. (ECF No. 266.) Expert discovery is ongoing and not scheduled to conclude until April 2025. (ECF No. 297.) Plaintiffs here have not sought amendment "on the eve of trial." *Sharkey*, *supra*. Plaintiffs' proposed amendment does not merit denial on grounds of prejudice.

### iii. Bad Faith

Defendants allege that Plaintiffs' delay in seeking leave to amend is not only prejudicial but also amounts to bad faith. "Bad faith is established 'when it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, [and] to present theories seriatim in an effort to avoid dismissal.'" *Carter v. SNC-Lavalin Constructors, Inc.*, No. CV DKC 17-3198, 2019 WL 918382, at *3 (D. Md. Feb. 25, 2019) (quoting *Minter v. Prime Equip.*, 451 F. 3d 1196, 1206 (10th Cir. 2006)). "Bad faith generally involves changing legal theories and the belated presentation of facts which the pleader was already aware of in an effort to delay ultimate resolution. *Id.*; *see also Daulatzai v. Maryland*, 606 F. Supp. 3d 252, 265 (D. Md. 2022), *aff'd*, 97 F.4th 166 (4th Cir. 2024) (denying leave to amend upon finding that plaintiff's repeated amendments had "not been a good-faith effort to

crystallize and pursue viable claims"); *Bioiberica Nebraska, Inc. v. Nutramax Mfg., Inc.*, No. 1:18-CV-03133-SAG, 2021 WL 242494, at *2 (D. Md. Jan. 25, 2021) (denying leave to amend because plaintiff "simply cannot be permitted to change its legal theories in perpetuity, serving only to unduly prolong this litigation.").

Defendants insist Plaintiffs have "known they needed to plead with particularity and prove with clear and convincing evidence why any of the Moving Defendants may be held liable" and thus their delay in seeking amendment constitutes bad faith. ECF No. 243 at p. 15. Defendants, however, did not challenge the adequacy of Plaintiffs' pleading with respect to the Moving Defendants until the instant motions.[4] The Fourth Circuit has explained that "a motion to amend should be made as soon as the necessity for altering the pleading becomes apparent. A party who delays in seeking an amendment is acting contrary to the spirit of the rule." *Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987) (quoting 6 Charles Alan Wright & Arthur A. Miller, *Fed. Prac. & Prod.* § 1488 (1971)). Here, Plaintiffs learned of the facts added to the proposed amended complaint within three months of filing the instant motion. (ECF No. 249 at pp. 12–13.) Plaintiffs have not acted in bad faith by unduly delaying amendment.

The court further notes important Fourth Circuit policy to "liberally allow amendment" in furtherance of "a wider federal policy of—when possible—resolving cases on the merits." *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022). Plaintiffs' Motion to Amend will be granted as against Defendants ENMC, ENB, and ESSA Bank & Trust and denied as against Defendants EN Bancorp and ESSA Bancorp, Inc.

---

[4] Defendants repeatedly reference Judge Gallagher's opinion in *Edmondson* to support their argument that Plaintiffs knew they needed to amend the pleadings in this case. (ECF No. 243 at p. 15 citing *Edmondson*, No. CV SAG-16-3938, 2023 WL 5336994 (D. Md. Aug. 18, 2023)).) The court disagrees. Summary judgment for the Moving Defendants in *Edmondson,* a case with a different record and at a very different posture, does not effectively place Plaintiffs on notice that their pleading was vulnerable to judgment on the pleading. Further, summary judgment for ENB and ESSA Bank & Trust has since been vacated based on defense discovery violations. *Edmondson v. Eagle Nat'l Bank*, No. CV SAG-16-3938, 2024 WL 4838805 (D. Md. Nov. 20, 2024).

**B. Judgment on the Pleadings**

In view of the foregoing, Defendants' Motion for Judgment on the Pleadings (ECF No. 219) will be denied as moot.

## IV.    CONCLUSION

For the reasons set forth herein, by separate order, Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 226) will be GRANTED IN PART and DENIED IN PART; Defendants' Motion for Judgment on the Pleadings (ECF No. 219) will be DENIED as moot.

/S/

Date: January 31, 2025                              _____

Julie R. Rubin
United States District Judge

15